**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
SUSSMAN-AUTOMATIC CORP.,

     Plaintiff,

   -vs.-

SPA WORLD CORPORATION d/b/a STEAM
SAUNA DEPOT, JOSEPH SCHWARTZ, an
individual, and IRA SCHWARTZ, an individual,

     Defendants.
--------------------------------------------------------X

           **MEMORANDUM OF**
           **DECISION AND ORDER**
           13-cv-7352 (ADS)(AKT)

<u>**APPEARANCES:**</u>

**Cowan, DeBaets, Abrahams & Sheppard LLP**
*Attorneys for the Plaintiff*
41 Madison Avenue
 34th Floor
New York, NY 10010
   By:  Eleanor Martine Lackman, Esq.
     Scott Jonathan Sholder, Esq., Of Counsel

**Stahl & Zelmanovitz**
*Attorneys for the Defendants*
747 Third Avenue
Ste. 33B
New York, NY 10017
   By:  Joseph Zelmanovitz, Esq., Of Counsel


**SPATT, District Judge**.

   On December 26, 2013, the Plaintiff Sussman-Automatic Corp. (the "Plaintiff")

commenced this action against the Defendants Spa World Corporation d/b/a Steam Sauna Depot

("Spa World") and its principals, Joseph Schwartz and Ira Schwartz (the "Individual

Defendants")(collectively the "Defendants").  According to the Plaintiff, the Defendants engaged

in a "bait-and-switch" scheme, orchestrated by the Individual Defendants, whereby they

1

purported to sell the Plaintiff's brand steam shower and spa products on their website and over the phone, but in reality, never actually stocked an inventory of those products. The Plaintiff further alleges that each time a customer ordered a Plaintiff-branded product, the Defendants' employees falsely told the customer that the requested product was "temporarily out of stock" and instead offered to sell the customer a Spa World branded product. In addition, the Plaintiff alleges that the Defendants attempted to "convert" the Plaintiff's customers to their products by misrepresenting material qualities of Defendants' products and by maligning the Plaintiff's products.

On March 19, 2014, the Plaintiff filed an amended complaint, asserting (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1); (2) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(a); (3) false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (4) common law trademark infringement; (5) common law unfair competition; (6) deceptive acts and practices under New York General Business Law § 349; and (7) trademark dilution under New York General Business Law § 360-1, *et seq.*

On April 1, 2014, the Defendants moved pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), 12(b)(1), and 9(b) to dismiss the complaint for failure to state a claim upon which relief can be granted.

For the following reasons, the motion is granted.

## I. BACKGROUND

Unless stated otherwise, the following facts are drawn from the amended complaint and construed in a light most favorable to the non-moving party, the Plaintiff.

The Plaintiff is a New York corporation with its principal place of business in Long Island City, New York. The Plaintiff is an innovator of commercial and residential steam

shower and spa equipment, and under its flagship brand, "Mr. Steam," sells high-technology steam shower generators and systems for both commercial and residential markets. The Plaintiff is the owner of three trademark registrations in the United States Patent and Trademark Office for variations of the trademark "Mr. Steam." The Plaintiff sells its "Mr. Steam" products to re-sellers around the world, not including Spa World.

Spa World is a Delaware corporation with its principal place of business in Valley Stream, New York. Spa World operates a website called Steam Sauna Depot. Spa World, through Steam Sauna Depot, sells and distributes its products in interstate commerce throughout the United States.

The Individual Defendants are domiciled in Nassau County, New York and are the principal officers of Spa World and Steam Sauna Depot.

During the time period relevant herein, one of the brands Spa World purported to offer for sale on the Steam Sauna Depot website was the Plaintiff's branded product, "Mr. Steam." Spa World displayed "Mr. Steam" products on its website. Also, according to the Plaintiff, Spa World falsely represented to its customers, over the phone, that it sold "Mr. Steam" products.

However, in fact, Steam Sauna Depot did not maintain an inventory of "Mr. Steam" products. Nor was Steam Sauna Depot ever a distributor to which the Plaintiff sold "Mr. Steam" products for resale.

As noted above, whenever a customer expressed an interest in ordering a "Mr. Steam" product from Steam Sauna Depot, either over the phone or by placing that item in an online shopping cart after seeing the item offered for sale at Steam Sauna Depot, a Spa World employee contacted that customer to tell him or her that the "Mr. Steam" product was "temporarily" out of stock but would be restocked in several weeks.

3

The Plaintiff asserts that these representations were false in at least two respects. First, the statement was allegedly false in a literal sense because Spa World did not maintain an inventory of "Mr. Steam" products in the first instance. Second, it was impliedly false because it gave customers the false impression that, at one time, "Mr. Steam products" were in stock in Spa World's inventory and that, in the future, they would be regularly stocked.

The Spa World employee would also allegedly tell the customer that Spa World would instead "upgrade" the customer to Spa World's own SteamSpa brand product for the same or a lower price, and would encourage the customer to purchase the SteamSpa product as an alternative to "Mr. Steam."

The Spa World employee would also allegedly claim that SteamSpa was a superior product to "Mr. Steam"; that its products were made in the United States; were certified by the "Underwriters Laboratories" ("UL"); and were of high quality. The Plaintiff alleges that these statements were literally false because SteamSpa products were manufactured and assembled in China – not the United States -- from inferior materials, such as plastics; exhibited inferior workmanship relative to "Mr. Steam" products; and were not UL certified.

On the Plaintiff's information and belief, employees of Spa World were specifically instructed and trained to "convert" prospective buyers of "Mr. Steam" products into buyers of SteamSpa products. The Plaintiff alleges that this "conversion" not only included the above-described "bait-and-switch" scheme and false "puffing" of Spa World's products, but included maligning the Plaintiff's Mr. Steam products.

The Plaintiff also alleges that it first learned of the "bait-and-switch" scheme when a sales manager at a "Mr. Steam" re-seller attempted to purchase a "Mr. Steam" product from the Steam Sauna Depot website, and was told that the website did not have the "Mr. Steam" products

in stock. The Plaintiff asserts that the manager could not complete the sale because, in fact, Spa World never maintained an inventory of "Mr. Steam" products, nor did Spa World intend to maintain such an inventory in the future. The Plaintiff further alleges that some of its employees verified the Defendants' practices by placing similar phone calls, and received the same treatment.

The Plaintiff asserts that the Defendants' "bait-and-switch" scheme resulted in customer confusion and lost sales.

As previously mentioned, on December 26, 2013, the Plaintiff commenced the instant action. On February 27, 2014, the Defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted.

On March 19, 2014, the Plaintiff filed an amended complaint. As stated above, the amended complaint raised causes of action for (1) trademark infringement under the Lanham Act; (2) unfair competition under the Lanham Act; (3) false advertising under the Lanham Act; (4) common law trademark infringement; (5) common law unfair competition; (6) deceptive acts and practices under New York General Business Law § 349; and (7) trademark dilution under New York General Business Law § 360-1, *et seq.*

On April 1, 2014, prior to discovery, the Defendants moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted.

With respect to the initial motion to dismiss, "[w]hen a plaintiff amends its complaint while a motion to dismiss is pending, . . . the 'court then has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint.'" <u>Roller Bearing Co. of Am., Inc. v. Am.</u>

<u>Software, Inc.</u>, 570 F. Supp. 2d 376, 384 (D. Conn. 2008) (citation and internal quotation marks and alterations omitted).

In this case, the Defendants filed a second motion to dismiss directed at the amended complaint. Therefore, the Court finds that any consideration of the initial complaint and motion to dismiss is unnecessary and denies that motion as moot.

The Court now turns to the operative second motion to dismiss.

## II. DISCUSSION

A. <u>The Legal Standard for a Motion to Dismiss</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570,127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937173 L. Ed. 2d 868 (2009). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." <u>Iqbal</u>, 556 U.S. at 678. A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

B. <u>The Pleading Standard for the Lanham Act Claims</u>

To state a claim sounding in fraud or mistake, Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading standard: "[A] party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Second Circuit has read Rule 9(b) to require that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent," in order to survive a motion to dismiss. <u>Rombach</u>

v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)) (internal quotation marks omitted).

"Authorities differ as to whether th[is] heightened pleading standard applies to Lanham Act claims." Wellness Pub. v. Barefoot, CIV.A. 02-3773 (JAP), 2008 WL 108889, at *14 (D. N.J. Jan. 9, 2008); compare e.g., Conditional Ocular Enhancement, Inc. v. Bonaventura, 458 F. Supp. 2d 704, 709 (N.D. Ill. 2006) ("Claims that allege . . . false advertising under the Lanham Act are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).") with John P. Villano, Inc. v. CBS, Inc., 176 F.R.D. 130, 131 (S.D.N.Y. 1997) ("a claim of false advertising under [the Lanham Act] falls outside the ambit of Rule 9(b) and may not be subject of any heightened pleading requirement"). The issue has not been addressed by the Second Circuit, nor does it appear that any other federal appellate court has reviewed the question of the applicability of Rule 9(b) to a Lanham Act claim. See RA Med. Sys., Inc. v. PhotoMedex, Inc., 373 F. App'x 784, 787 n. 3 (9th Cir. 2010)("Ra Medical waived the claim that Rule 9(b) should apply by failing to raise it before the district court.").

The Defendants fail to cite a single case within this Circuit that applied a Fed. R. Civ. P. 9(b) heightened pleading requirement to Lanham Act claims. Barr Labs., Inc. v. Quantum Pharmics, Inc., 827 F. Supp. 111, 117 (E.D.N.Y. 1993)([I]t is unclear whether Fed. R. Civ. P. 9(b), which mandates that a plaintiff plead allegations of fraud with particularity, is applicable to a Lanham Act claim.") Absent any precedent counseling in favor of the Defendants' position, the Court declines to impose these heightened pleading standards on the Plaintiff's Lanham Act claims. See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993) (noting that heightened pleading standards

"must be obtained by the process of amending the Federal Rules, and not by judicial

interpretation").

C.  The Trademark Infringement Claim Under the Lanham Act

"Courts employ substantially similar standards when analyzing claims for trademark

infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a) . . . trademark infringement under

New York common law; and unfair competition under New York common law. Van Praagh v.

Gratton, 13-CV-375 (ADS)(AKT), 2014 WL 2924,  at *4 (E.D.N.Y. Jan. 28, 2014)(Spatt. J.);

Richemont N. Am., Inc. v. Huang, 12 CIV. 4443 (KBF), 2013 WL 5345814 at *5 n. 15

(S.D.N.Y. Sept. 24, 2013)("Count III is for unfair competition under Section 43(a) of the

Lanham Act, and requires an identical test to that for infringement.").

In this regard, "[t]o prevail on an infringement action [under the Lanham Act, 15 U.S.C.

§ 1114(1)(a) ], a plaintiff must demonstrate: (1) 'that it has a valid mark entitled to protection,'

and (2) 'that the defendant's use of that mark is likely to cause confusion.'" Juicy Couture v.

Bella Intern. Ltd., 930 F. Supp. 2d, 489, 498 (S.D.N.Y. 2013) (quoting Time, Inc. v. Petersen

Publ'g Co. LLC, 173 F.3d 113, 117 (2d Cir. 1999)).

Here, the Court finds that the Plaintiff has adequately alleged that it has a valid trademark

entitled to protection under the Lanham Act.

However, there is "an essential distinction" "between a deliberate attempt to deceive and

a deliberate attempt to compete.  Absent confusion, imitation of certain successful features in

another's product is not unlawful and to that extent a 'free ride' is permitted." George Basch Co.

v. Blue Coral, Inc., 968 F.2d 1532, 1541 (2d Cir. 1992) (citation omitted).  Infringement requires

"a probability of confusion, not a mere possibility." Streetwise Maps, Inc. v. VanDam, Inc., 159

F.3d 739, 743 (2d Cir. 1998). Further, it is well-established that "point-of-sale confusion is not the only confusion which the Lanham Act seeks to prevent; other forms of confusion, including . . . initial interest confusion . . . may also be actionable." Louis Vuitton Malletier v. Burlington Coat Warehouse Corp., 426 F.3d 532, 539 n. 4 (2d Cir. 2005).

This type of confusion occurs where "potential consumers initially are attracted to the junior user's mark by virtue of its similarity to the senior user's mark, even though these consumers are not actually confused at the time of purchase." Jordache Enterprises, Inc. v. Levi Strauss & Co., 841 F. Supp. 506, 514-15 (S.D.N.Y. 1993). "Such initial interest confusion is sufficient to infringe a trademark." Katz v. Modiri, 283 F. Supp. 2d 883, 899 (S.D.N.Y. 2003); see Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 260 (2d Cir. 1987); Grotrian, Helfferich, Schulz, Th. Steinweg Nachf v. Steinway & Sons, 365 F. Supp. 707, 717 (S.D.N.Y. 1973), aff'd 523 F.2d 1331, 1342 (2d Cir. 1975) (finding that where the potential purchasers of Steinway pianos were initially interested in Grotrian–Steinweg pianos because of the name, the value of Steinway's trademark could be harmed).

With respect to determining whether the use of a mark by the defendant will cause confusion,

> [c]ourts look to the following factors . . . :(1) the strength of the plaintiff's mark; (2) the similarity of the marks; (3) the competitive proximity of the products in the marketplace; (4) the likelihood that the senior user will "bridge the gap" by moving into the junior's product market; (5) evidence of actual confusion; (6) the junior user's bad faith in adopting the mark; (7) the respective quality of the products; and (8) the sophistication of the consumers in the relevant market.

Juicey Couture, 930 F. Supp. 2d at 499 (citing Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961)).

It is not clear how an analysis of the eight Polaroid factors interacts with the theory of "initial customer confusion." Compare Malletier, 426 F.3d at 537 n. 2 (noting that the Lanham

Acts protects against point-of sale confusion, initial interest confusion, post-sale confusion, and that "the Polaroid factors must be applied with an eye toward each of these."), with OBH, Inc. v. Spotlight Magazine, Inc., 86 F. Supp. 2d 176, 190 (W.D.N.Y. 2000) ("initial interest confusion" theory "does not fit neatly within any of the eight Polaroid factors")

In any event, "an application of the so-called Polaroid factors on [a] motion to dismiss would be inappropriate because it would involve premature factfinding. See Eliya, Inc. v. Kohl's Dep't Stores, No. 06–CV–195 (GEL), 2006 WL 2645196, at *3-4 n. 2, 2006 U.S. Dist. LEXIS 66637, at *10 n. 2 (S.D.N.Y. Sept. 13, 2006). There is no requirement that a plaintiff address the Polaroid factors in its pleading; such a requirement would be inconsistent with the 'notice pleading' philosophy of the Federal Rules of Civil Procedure." Id. at *3 n. 2; see also Merck & Co. v. MediPlan Health Consulting, Inc., 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006) ("The likelihood of confusion test is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss").

At this juncture of the litigation, the parties dispute the requisite elements for a claim for "initial interest confusion" under the Lanham Act. The Defendants maintain that the Plaintiff has failed to allege confusion as a result of similarity between the Plaintiff's and the Defendants' trademarks, and, therefore, fails to state a claim based on the theory of "initial interest confusion." On the other hand, the Plaintiff asserts that no such allegation is necessary. Rather, the Plaintiff counters, "initial interest confusion" turns on a defendant's unauthorized use of the plaintiff's trademark to divert prospective customers from the Defendant to the Plaintiff. With regard to these assertions, the Court agrees with the Defendants.

Although the term "initial interest confusion" was coined in a Ninth Circuit case, Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036 (9th Cir.

1999), "the principle that such confusion is actionable as grounds for a trademark infringement action originated in this Circuit." 1–800 Contacts, Inc. v. WhenU.com, 309 F. Supp. 2d 467, 491 (S.D.N.Y. 2003), rev'd on other grounds, 414 F.3d 400, 406 (2d Cir. 2005). This type of confusion occurs where "potential consumers initially are attracted to the junior user's mark by virtue of its similarity to the senior user's mark, even though these consumers are not actually confused at the time of purchase." Jordache Enterprises, Inc., 841 F. Supp. at 514-15 (emphasis added); see also Cartier, a Div. of Richemont N. Am., Inc. v. Symbolix, Inc., 454 F. Supp. 2d 175, 185 (S.D.N.Y. 2006)(quoting Jordache Enterprises); Katz, 283 F. Supp. 2d at 899 (same).

For example, in Grotrian, Helfferich, Schulz, Th. Steinweg Nachf, 523 F.2d at 1341, the Second Circuit held that the defendant's "Grotrian-Steinweg" mark for its pianos was so similar to the Steinway mark that it could mislead potential Steinway customers "into an initial interest" in the Grotrian-Steinweg brand because they believed it was connected to Steinway, even if the customers realized upon additional investigation that no such connection existed..

Similarly, in Mobil Oil Corp., 818 F.2d at 254, the Second Circuit explained that the defendant's name "Pegasus" evoked the image of a flying horse like the one used by Mobil for its mark and, therefore, potential purchasers could have been misled into listening to the defendant's marketing calls. The Court found that "[s]uch initial confusion works a sufficient trademark injury," even if the oil traders realized by the time they entered into any deals that no connection existed between the companies. Id. at 260.

It is true, as the Plaintiff contends, that each of these cases, as in this case, concerned a defendant's use of the plaintiff's trademark, or something resembling that mark, to divert prospective customers looking for a plaintiff's product into the arms of the defendant-competitor. However, the Plaintiff confuses necessity and sufficiency. To state an "initial interest confusion"

theory of relief, the Plaintiff must not only allege the Defendant's unauthorized use of the Plaintiff's trademark, or something resembling that mark, but also a similarity between the parties' respective marks.

Contrary to the contention of the Plaintiff, neither Cartier nor Brookfield dictate otherwise. In fact, as noted above, Cartier cites Jordache Enterprises, Inc. for the proposition that "initial interest confusion" requires that potential consumers be attracted to the junior user's mark "by virtue of its similarity to the senior user's mark." 454 F. Supp. 2d at 185.

In Brookfield, 174 F.3d at 1062, the Ninth Circuit held that the Lanham Act bars a website owner from including in its HTML code any term that is confusingly similar to a competitor's mark. The court found that the defendant's use of terms confusingly similar to plaintiff's trademarked term "MovieBuff" in metatags placed in the defendant's website would result in initial interest confusion "in the sense that, by using 'moviebuff.com' or 'MovieBuff' to divert people looking for 'MovieBuff' to its website, [defendant] improperly benefit[ted] from the goodwill that [plaintiff] developed in its mark." Id.

Here, by contrast, there is no allegation regarding the Defendants' trademarks, much less that they resembled the Plaintiff's marks. To the contrary, the amended complaint, in fact, undercuts a theory of "initial customer confusion" inasmuch as the Plaintiff alleges that the Defendants maligned the Plaintiff's "Mr. Steam" products as inferior to the Defendants' products. In other words, the Defendants' purported acts in distinguishing the Plaintiffs products from the Defendants' products renders implausible any inference that there could be confusion about the source of the product. For these reasons, the Court dismisses the Plaintiff's trademark infringement claim under the Lanham Act.

Further, even if the unauthorized use of the Plaintiff's branded products may have helped the Defendants gain "crucial credibility during the initial phases" of a purchasing decision, <u>Mobil Oil Corp.</u>, 818 F.2d at 259, there is no allegation that such credibility was acquired on account of the similarity between the parties' respective trademarks, as is required to state a claim sounding in "initial interest confusion."

To be sure, the Plaintiff alleges tangible confusion on the part of consumers who may have been under the false impression that the Defendant maintained a regular inventory of the "Mr. Steam" products; that the Plaintiff approved of and endorsed the Defendants' "resale" of the Plaintiffs products; and that the Defendants effectively traded on the goodwill of the Plaintiff's products. However, the confusion at issue did not result from uncertainty regarding the source of a product, either prior to or at the point-of-sale. To the extent the Plaintiff's allegation suggest an inference of fraud, any such cause of action, which in federal terms would be subject to a heightened pleading standard under Rule 9(b), is not currently before the Court.

D. <u>The Claim for Trademark Infringement Under New York State Common Law</u>

"[T]he standards for trademark infringement . . . under New York common law are essentially the same as under the Lanham Act." <u>Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.</u>, 220 F. Supp. 2d 289, 297-98 (S.D.N.Y. 2002); <u>see also</u> <u>Bi–Rite Enters., Inc. v. Button Master</u>, 555 F. Supp. 1188, 1193 (S.D.N.Y. 1983) ("[T]he essential elements of state . . . trademark infringement claims are but a restatement of unfair competition under the Lanham Act.").

The Court has granted the Defendants' motion to dismiss the Plaintiff's trademark infringement claim under the Lanham Act. Accordingly, the Court also grants the Defendants' motion to dismiss the Plaintiff's New York State law trademark infringement claim.

E. The Claim for False Advertising Under the Lanham Act

A person is liable under section 43(a)(1)(B) of the Lanham Act if "in connection with any goods or services . . . [he] uses in commerce any . . . false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). Suit may be brought by "any person who believes that he or she is or is likely to be damaged by such act." Id. The Second Circuit has identified a "materiality" requirement that the misrepresentation go to an "'inherent quality or characteristic' of the product." S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d Cir. 2001). "Thus, a section 43(a)(1)(B) claim requires (1) a false or misleading statement (2) in connection with commercial advertising or promotion that (3) was material, (4) was made in interstate commerce, and (5) damaged or will likely damage the plaintiff." C=Holdings B.V. v. Asiarim Corp., 12 CIV. 928 (RJS), 2013 WL 6987165, at *10 (S.D.N.Y. Dec. 16, 2013).

1. False or Misleading Statement

The false or misleading representation element is shown if either (1) the "challenged advertisement is literally false, i.e., false on its face" or (2) "the advertisement, while not literally false, is nevertheless likely to mislead or confuse customers." Tiffany (NJ) Inc. v. eBay, Inc., 600 F.3d 93, 112 (2d Cir. 2010). To be literally false, the message must be unambiguous; if the representation "is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false," and the advertisement is actionable only upon a showing of actual consumer confusion. Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 158 (2d Cir. 2007). However, literal falsity may be proved by implication. Id. Under the false by necessary

implication doctrine, "[i]f the words or images, considered in context, necessarily imply a false message, the advertisement is literally false." Id. When a plaintiff demonstrates the literal falsity of an advertisement, consumer deception is presumed. Id. at 153. Consumer deception is also presumed when the defendant "intentionally set out to deceive the public, and the defendant's deliberate conduct in this regard [was] of an egregious nature." Johnson & Johnson Merck Consumer Pharm. Co. v. Smithkline Beecham Corp., 960 F.2d 294, 298 (2d Cir. 1992)(quotation marks and citation omitted).

At the outset, the Court notes that the amended complaint essentially speaks to four distinct types of alleged "false or misleading representations" on the part of the Defendants' or their employees, namely: (1) the display of "Mr. Steam" products on the Defendants' website; (2) the assertion that the Defendants were temporarily out of the "Mr. Steam" products; (3) positive representations about the Defendants' products; and (4) negative representations about the Plaintiff's products.

As to the first two categories of representations, the Court finds that the Plaintiff has adequately alleged their falsity for purposes of the Lanham Act. The fact that the Defendant promoted the "Mr. Steam" products on its website, while not false in the literal sense, could imply a false message that the Defendants carried "Mr. Steam" products in its inventory. Similarly, the Court finds that an assertion by an employee of Spa World that the Defendants were temporarily out of stock of the "Mr. Steam" Products could imply a false message that the Defendants carried or intended to carry "Mr. Steam" products in its inventory.

The Defendants contend that positive representations made by Spa World employees about the Defendants' products are mere puffery: "[s]ubjective claims about products, which cannot be proven either true or false, [that] are not actionable under the Lanham Act." Lipton v.

Nature Co., 71 F.3d 464, 474 (2d Cir. 1995). "Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language." Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 945 (3d Cir. 1993); Lipton, 71 F.3d at 474 (same). A puffing statement is not actionable because the audience for the statement cannot be deceived by it; it is quintessential "sales talk . . . to be discounted as such by the buyer." Castrol Inc., 987 F.2d at 945 (citing Keeton, et al., Prosser & Keeton on Torts § 109, at 756-57 (5th ed. 1984)). As the Second Circuit has stated: "The 'puffing' rule amounts to a seller's privilege to lie his head off, so long as he says nothing specific." Time Warner Cable, Inc., 497 F.3d at 159 (quotation marks and citation omitted).

"Puffery is distinguishable from misdescriptions or false representations of specific characteristics of a product." Castrol Inc., 987 F.2d at 945. The Lanham Act expressly forbids false or misleading descriptions or representations of fact concerning "the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." Id., quoting 15 U.S.C. § 1125(a)(1)(B); see Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs., 850 F.2d 904, 917 (2d Cir. 1988) (holding that, to succeed on a false advertising claim under the Lanham Act, "a plaintiff must prove that the defendant misrepresented an inherent quality or characteristic of the defendant's product")(internal quotation marks omitted).

Here, although the Plaintiff concedes that the Defendants engaged in some "puffing," (Amended Compl., at ¶ 26), the Court finds that the Plaintiff alleges sufficient facts to support the inference that the Defendant made "false or misleading representations" in violation of the Lanham Act. In particular, the amended complaint alleges that Spa World employees falsely represented to prospective "Mr. Steam" customers that Spa World products were manufactured in the United States and were "UL" certified (Id. at ¶ 25.); see In re Xerox Corp. Sec. Litig., 165 F. Supp. 2d 208, 218 (D. Conn. 2001) (plaintiffs' allegations "go beyond claims of mere puffery"

16

because the defendants "made specific statements, including . . . those characterized by the defendants as merely reflecting optimism, knowing they were contrary to the company's actual situation.").

The Defendants submitted documentary evidence disputing these allegations. However, on a motion to dismiss, the Court declines to consider matters beyond the four corners of the complaint, with certain exceptions not applicable here. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 113 (2d Cir. 2010) ("In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.") (citation and internal question marks omitted); Hahn v. Rocky Mt. Express Corp., No. 11 Civ. 8512 (LTS)(GWG), 2012 WL 2930220, at *2 (S.D.N.Y. June 16, 2012) ("When deciding a motion to dismiss . . . [e]vidence outside [the complaint] . . . cannot [ ] be considered on review of a 12(b)(6) motion.") (citation and internal quotation marks and alterations omitted).

The Court further finds that the allegations concerning negative representations made by Spa World employees about the Plaintiff's products suffice to state the element of "false or misleading representations." According to the Plaintiff, "Spa World routinely tells customers that Mr. Steam's products are of poor quality, are unreliable and sluggish, and are inferior to SteamSpa products." (Amended Compl., at ¶ 26.) In the Court's view, these allegations satisfy the element of "false or misleading representations" for a claim of false advertising under the Lanham Act.

## 2. In Commercial Advertising or Promotion

The Defendants further contend that the Plaintiff fails to state that the Defendants' alleged false or misleading representations were made "in commercial advertising or promotion."

17

The commercial advertising or promotion element is established if "the contested representations are part of an organized campaign to penetrate the relevant market"; "[p]roof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement." Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 57 (2d Cir. 2002). In evaluating whether a party's statements were "part of an organized campaign to penetrate the relevant market," the Second Circuit has considered the following factors: (1) the number of alleged statements; (2) to whom the statements were made; (3) where the statements were made; and (4) the size of the relevant market. Id. at 58.

In Fashion Boutique, the Second Circuit affirmed a district court order awarding summary judgment to the defendants on the basis that the plaintiff had not established that the alleged representations by the defendant regarding the quality of the Fendi bags sold by the plaintiff had been sufficiently disseminated to constitute commercial advertising or promotion. The court found that the plaintiff Fashion Boutique's evidence, consisting of 27 oral statements made by the defendant Fendi USA about plaintiff's products "in a marketplace of thousands of customers," did not suggest that there was an "organized campaign to penetrate the marketplace." 314 F.3d at 48; see also Sports Unlimited, Inc. v. Lankford Enters., Inc., 275 F.3d 996, 1004-05 (10th Cir. 2002) (finding evidence of dissemination of information to two customers, where the plaintiff made up to 150 bids per year, insufficient to constitute "commercial advertising or promotion"); Cartier, Inc. v. Four Star Jewelry Creations, Inc., 348 F. Supp. 2d 217, 250 (S.D.N.Y. 2004) (holding, after a bench trial, that in making false representations to investigators about the plaintiffs, the defendants were not engaging in widespread dissemination or an organized campaign under the Lanham Act); cf. SevenUp Co. v. Coca–Cola Co., 86 F.3d 1379, 1384 (5th Cir. 1996) (finding evidence of dissemination sufficient

where statements were made to eleven out of seventy-four potential customers). However, unlike this case, the foregoing cases were decided after discovery and based upon evidence in the record.

In any event, the Court finds that the unspecified number of phone calls and interactions between the Defendants' employees and prospective "Mr. Steam" consumers and the online display of the Plaintiff's products on the Spa World website, both albeit without a clear time frame, is sufficient to infer an "organized campaign" on the part of the Defendants.

That said, the Court finds that the Plaintiff makes no attempt to define or allege a "relevant market" for purposes of the false advertising claim. However, the Court finds that affording the Plaintiff leave to replead the facts in support of this element may not be futile. Accordingly, the Plaintiff may file a second amended complaint as to the false advertising claim within thirty days of the date of this order. Because the Court finds that the Plaintiff's false advertising claim fails to state a "relevant market," the Court declines to consider the remaining elements required to state such a claim.

F. The Claim for Unfair Competition Under the Lanham Act

The Plaintiff also alleges a separate cause of action for unfair competition under the Lanham Act. "Yet under Section 43 of the Act, there is no specific Federal cause of action for unfair competition. Instead unfair competition under the Lanham Act is a category of claims consisting primarily of causes of action for false designation of origin and false advertising." Pot Luck, L.L.C. v. Freeman, 06 CIV.10195 (DAB), 2009 WL 693611, at *4 (S.D.N.Y. Mar. 10, 2009); Tiffany (NJ) Inc. v. Ebay, Inv., 576 F. Supp. 2d 463, 519 (S.D.N.Y. 2008) (stating the elements that must be proven to state a claim under the Lanham Act for "unfair competition and false designation of origin"); 1 Callmann on Unfair Comp., Tr. & Mono. § 2:7 (4th ed. 2008)

(noting that the three types of unfair competition claims under the Lanham Act are (1) false designation of origin; (2) false descriptions and misrepresentations; and (3) unfair practices covered by international conventions); 5 McCarthy on Trademarks and Unfair Competition § 27:9 (4th ed. 2009) (noting that Section 43 of the Lanham Act has "gradually developed through judicial construction into the foremost federal vehicle for the assertion of two . . . types of unfair competition: (1) infringement of even unregistered marks, names and trade dress, and (2) false advertising"). For this reason, the Court dismisses the Plaintiff's unfair competition claim under the Lanham Act as duplicative of the Plaintiff's trademark infringement and false advertising claims under that statute. Tactica Int'l, Inc. v. Atl. Horizon Int'l, Inc., 154 F. Supp. 2d 586, 597 n. 14 (S.D.N.Y. 2001)("Because Tactica's claims of unfair competition and trademark infringement (for unregistered marks) under Section 43(a) of the Lanham Act are one in the same, they need not be addressed as separate causes of action.").

G. The Claim for Unfair Competition under New York State Common Law

The elements of unfair competition under New York State common law closely parallel the elements of unfair competition under the Lanham Act, except that a plaintiff must show "either actual confusion or a likelihood of confusion, and there must be 'some showing of bad faith' on the part of the defendants." Medisim Ltd. v. BestMed LLC, 910 F. Supp. 2d 591, 606 (S.D.N.Y. 2012)(citation omitted). However, the Court has previously determined that the Plaintiff's unfair competition claims under the Lanham Act should be dismissed as duplicative of the Plaintiff's trademark infringement and false advertising claims. Accordingly, the Court grants the Defendants' motion to dismiss the Plaintiff's claim for unfair competition under New York State common law.

H.  <u>The New York State Statutory Claims</u>

The Court also raises claims under New York General Business Law § 349 and New York General Business Law § 360-1, *et seq.*  The Judicial Code states that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . ." 28 U.S.C. § 1367(c)(3).

Having dismissed the Lanham Act claims, the Court declines to exercise supplemental jurisdiction over the remaining New York State statutory claims pursuant to 28 U.S.C. § 1367(c)(3).  The Court addressed the Plaintiff's New York State common law claims because they are decided under nearly indistinguishable standards as the Lanham Act claims.  In this regard, nothing in the text of 28 U.S.C. § 1367(c)(3) prevents a Court from exercising supplemental jurisdiction over some, but not all, of the relevant state law claims.  Rather, 28 U.S.C. § 1367(c)(3) merely requires the dismissal of all claims over which the Court had original jurisdiction, a precondition satisfied here.

However, the Court notes that, if the Plaintiff files a second amended complaint re-asserting the claim for false advertising under the Lanham Act, the Plaintiff may also reassert these New York State statutory claims.

### III. CONCLUSIONS

In sum, the Court denies as moot the motion to dismiss the initial complaint.  The Court grants the motion to dismiss the amended complaint and the amended complaint is dismissed in its entirety.  The Plaintiff's false advertising claim under the Lanham Act and the New York State statutory claims are dismissed without prejudice.  The Plaintiff is given thirty days from the date of this order to file a second amended complaint with regard to the causes of action for false

advertising under the Lanham Act and the New York State statutory claims. If the Plaintiff fails

to do so, the Clerk of the Court is directed to close the case.

**SO ORDERED.**

Dated: Central Islip, New York
April 25, 2014

___*Arthur D. Spatt*_____
   ARTHUR D. SPATT
United States District Judge